October and November Term, 1884, No. 124.    Nov. 23, 1884.

## Diehl *et al. v.* Woods.

A landlord who was also a boarder with his tenant, occupying a room on the premises under a verbal arrangement made at the same time as the written lease, upon notice from the tenant gave up the board but refused to surrender the room, saying that he owned the house and would not leave. *Held* that his subsequent payment for the use and occupation of the room took from the case the technical character of an eviction by him which would prevent him from recovering for the rent by a distress.

Before Mercur, C. J. ; Gordon, Paxson, Trunkey, and Clark, JJ. Green and Sterrett, JJ., absent.

[Diehl *et al. v.* Woods.]

Error to the Court of Common Pleas, No. 1, of *Allegheny County.*

*Replevin* by F. R. Diehl and Amanda Diehl, his wife, in her own right, and Clara V. Diehl against H. H. Woods, agent, and G. W. Carnes, constable, for household goods seized in distress for rent alleged to be in arrear.

Upon the trial of the case, April 16, 1884, before BAILEY, J., the following facts appeared:

On April 1, 1883, Fred. R. Diehl, as tenant, entered into articles of agreement with William Woods the landlord, for the renting of a three-story brick house in Pittsburgh. The annual rent of $700 was to be paid in monthly installments of $58 33 each. Diehl had occupied the house the year before and Woods, the landlord, boarded with him, paying $33 50 per month for his room and boarding. This arrangement as to boarding was continued after the renewal of the lease as before.

*Amanda Diehl,* one of the plaintiffs, testified in substance *inter alia:* On the morning of the 17th of April, (1883,) I went to market. I prepared him a meal fit for any person to sit down to. He objected to it, saying it wasn't fit for dogs to eat and that he had never eaten more trash and dirt than he had there. I told him I didn't want him to board there any more. He made himself so objectionable I was dissatisfied and asked him to leave. He did not. He left his board. He said he wouldn't leave the room, that he owned the house, and he would stay in the house. I told him I certainly wanted the room if he didn't board. I certainly wanted the room, which was the best room in the house. I had one other boarder. He would not leave the house. He occupied the room afterwards until I left the house the 31st of March. I gave him a written notice, asking him to leave the room the first day of May which he refused. He showed the written notice, saying he was the owner of the house and wouldn't leave.

Upon cross-examination, she testified:

The arrangement was, that Mr. Woods was to stay there and board when the house was leased. He was to have his room and board. I told Mr. Woods I didn't want him to board with me any longer, and to leave the room. Then he ceased to board with me. He boarded with me seventeen days. After that I kept his room clean and washed his bedclothes. I and the family had possession of all the rest of the house. The notice I served on the old gentleman stated that I did not want him either to

[Diehl *et al. v.* Woods.]

board with me or to stay in the house any longer.  He declined to leave the house and said he wouldn't board with me.  It was at my request that he didn't board with me.  I requested him to leave the house.  Served a notice on him asking him to leave the room.  At the time I had the notice served on him I had the room rented to a gentleman who was to pay me $20 a month.

This testimony was corroborated by other witnesses.

The plaintiff submitted *inter alia,* the following point :

6.  If the jury believe from the evidence that the plaintiff entered into possession of the premises in question on the 1st of April, 1883, under a sealed contract of lease with the landlord, and that the landlord was received as a boarder on the same day, and remained there for seventeen days, occupying the best room in the house, that, owing to dissatisfaction between him and the tenant, he was requested and notified by the tenant on the 17th day of April, 1883, and at other times thereafter, to deliver up the room and leave the house, that he absolutely refused to do so, stating and contending that he was the owner of the house and had a right to stay there and occupy said room, and that the tenant couldn't put him out, and that he did stay and occupy said room against the will and consent of the tenant, such action on the part of the landlord was an interruption of the tenant's rights under the lease, such as interfered with his possession, and amounted to an actual adverse possession and substantial eviction of the tenant from a part of the demised premises, and in view of these facts the rent would be, and was, suspended from that time, and the landlord is entitled only to rent accrued prior to said interference and eviction.

Refused.  (Sixth assignment of error.)

The Court charged the jury *inter alia,* as follows :

"A tenant, of course, is entitled, so far as the landlord is concerned, to the possession of the entire premises, and any interference with the enjoyment of the premises on the part of the landlord, as landlord, will constitute what is called, in law, an eviction ; and if there be an eviction by the landlord of any part of the premises, it would suspend the rent, which means there will be no rent due. Because, on the theory that the contract is an entire one, if the landlord cannot collect the whole of the rent, by reason of his misconduct, he cannot collect any of it.

"In this case, however, in the view the Court takes of the law, the landlord, as landlord, did no act which constitutes an eviction.

[ "I affirm the first and only point of the defendants,

[Diehl *et al. v.* Woods.]

"That the occupancy of the room in question by the landlord, Mr. Woods, under the contract between the said landlord and the tenant, testified to by Mrs. Diehl, was not an eviction.'

"I so instruct you. It was not an eviction in law, consequently there is no defense on that ground, and that, I believe, is the entire defense presented on the part of the plaintiffs—that they were evicted by the landlord. I do not so understand it. He entered there as a boarder, by the consent of the parties in possession, and he remained there without ever leaving it, and without assuming (in his acts, except in his own words,) the relation of landlord.

"It was not an entry by the landlord, either actual or constructive, and therefore it was not an eviction in law.]

"Ordinarily, apart from the arrangement between the parties, there is no such thing as set-off in a case of this kind. It leaves parties, if there be anything else in the case other than the mere question of rent, to determine that in another action, but, as you heard me suggest to counsel, that in a case of this kind if an arrangement was made by which a deduction could be made upon this rent, it would save, as has been said, another action, and that has been assented to by the plaintiffs, without prejudice to any rights they have under this case, as they have presented it. But that if the view the Court has taken of the matter be ultimately sustained, in that event there need be no other action brought.

"Mr. Woods did stay there against the wish of Mrs. Diehl, if not against the wish of her husband, and remaining there as he did, he is bound to pay what would be a fair compensation for the services performed for him, for the occupancy of this room, and the attention that was requisite to care for it. That is a question for you to ascertain.

"While you would naturally assume, probably, as men, that a man who stays where he is not wanted ought to pay, possibly, smarting rent, that is not the law. All the plaintiffs would be entitled to would be compensation for what the occupancy of this room was worth from the 17th of April to the 1st of July, which is the quarter's rent covered here, and for the boarding and lodging for the seventeen days of the month of April [and your verdict will be for the amount of the rent, less these deductions for the boarding and lodging for the seventeen days, and the lodging for the balance of the quarter, with interest upon the balance."]

[Diehl *et al. v.* Woods.]

Verdict for defendants for $129 71 and judgment thereon. The plaintiffs thereupon took this writ, assigning for error, *inter alia*, the refusal of their point as above and the portions of the charge in brackets.

*W. C. Erskine* and *A. S. Miller* for plaintiffs in error.

We cannot conceive of a case stronger in all the elements, according to the authorities, which go to make up an eviction, an interference by the landlord with the tenant's possession.

His words, together with his acts, we think constituted a substantial eviction of the tenant from a part of the premises.

The tenant was in possession ; the landlord, on the 17th day of April, ceased to be a boarder, and on that same day he entered as landlord, took up a part of the house, asserted his right to remain there as landlord, and dispossessed the tenant of a part of the premises, and refused to leave.

There may be a constructive eviction—an eviction without actual physical expulsion :   McClurg *v.* Price, 59 Pa. St. Rep., 423 ; Magaw *v.* Lambert, 3 Barr, 444 ; Hœveller *v.* Fleming *et al.*, 8 W. N. C., 65 ; Taylor on Landlord and Tenant, 7th Ed., Sec. 381 ; Doran *v.* Chase, 2 W. N. C., 609 S. C. ; Briggs *v.* Thompson, 9 Barr, 340.

Any interference with the tenant's beneficial enjoyment of the demised premises will amount to an eviction in law: Pier *v.* Carr, 69 Pa. St. Rep., 327 ; Doran *v.* Chase, 2 W. N. C., 609 S. C. ; Hœveller *v.* Fleming, 8 W. N. C., 66 S. C.

In this case, the landlord ceased to be a boarder and asserted his unqualified right as landlord to stay in the house and occupy the room against the wish, consent, and will of the tenant, which certainly would amount to an interference with the tenant's beneficial enjoyment of the premises, and would amount to an eviction in law.

If the landlord claim and use certain privileges upon the demised premises against the tenant's consent, he must show a reservation of them or the rent is suspended: Vaughan *v.* Blanchard, 4 Dallas, 124 ; Hœveller *v.* Fleming, 8 W. N. C., 66 S. C.

*Thomas S. Bigelow* and *Charles C. Dickey* for defendants in error.

The landlord was lawfully in possession of the room, and under the contract had a right to remain there during the year.   He showed his right to remain upon the prem-

[Ford *et al. v.* Borough of Chartiers.]

ises and to reserve the room, and thus prevented a sus-
pension of the rent. Vaughan *v.* Blanchard, 4 Dallas,124.

NOVEMBER 13th, 1884.—PER CURIAM: This is not the
case of an eviction by the landlord, of his tenants from the
possession. He entered as a boarder by their permission
and in subordination to their rights. He paid for his
board and lodging. It is not necessary that his right to
thus occupy a room should have been reserved in the lease
or at the time of its execution. Subsequent permission
for him to thus occupy was sufficient. He had occupied
the room under them the previous year, and had entered
on the second year when the difficulty in regard to the
board occurred. His unwillingness to then cease to oc-
cupy the room; but his subsequent payment to them for
the use and occupation thereof, took from the case the
technical character of an eviction by a landlord. The
assignments of error are not sustained.

Judgment affirmed.